IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY

AT NOVEMBER TERM, 1853.

---

## JAMES W. CALDWELL, ADMINISTRATOR, ETC., AND OTHERS v. FIFIELD & MATTHEWS.

---

1. A judgment will not be set aside on the ground that it was fraudulently confessed for a larger sum than was actually due, unless the fact be clearly established.

2. Giving to the sheriff, after the levy, a stay of execution, leaving the property in the hands of the defendant, and permitting him to deal with it as his own, does not render the execution constructively fraudulent. Such acts do not constitute a legal fraud, which, without regard to the *bona fides* of the transaction, will postpone the execution in favor of a subsequent levy; they merely afford evidence of a fraudulent intent, which may be rebutted.

3. A levy made by returning an inventory of the property levied upon, furnished by the defendant for the purpose, is valid.

4. It is not necessary that the sheriff, at the time of making the levy, should have the property in his view or under his actual control.

5. Subsequently acquired property is not bound by the levy.

6. The lien of an execution upon standing timber, levied upon as the interest of the defendant under a "timber lease," is not lost by the timber being severed from the land with or without the consent of the plaintiff.

7. A receipt given on account of an execution cannot be cancelled by the parties, and the execution, as to the amount paid, be revived to the prejudice of subsequent execution creditors.

150

This cause was brought into this court by *certiorari* to the Court of Common Pleas of the county of Cape May removing the order and proceedings of that court between the plaintiffs in *certiorari* and the defendants therein, who were all execution creditors of one Mackey Williams, settling the priority of their executions. The case was submitted to this court upon an agreement between the counsel, by which the depositions taken in the court below were laid before the court, to determine from them the law and the facts, in the same manner as if they had been originally taken in this court, as to executions issued out of it.

The facts material to the decision in this cause are sufficiently stated in the opinion of the court, delivered by the Chief Justice.

The cause was argued before the CHIEF JUSTICE and Justices OGDEN and HAINES, by Mr. *Browning,* for plaintiffs in *certiorari,* and Mr. *Carpenter* and Mr. *Nixon,* for the defendants.

*Browning,* for plaintiffs in *certiorari,* cited 6 *Halst.* 309, *Matthews* v. *Warne; Ib.* 222, *Lloyd* v. *Wykoff;* 1 *Harr.* 254, *Cook* v. *Hood; R. S.* 977, § 5.

*Carpenter* and *Nixon,* for defendants, cited 3 *Green* 374, *Evans* v. *Adam's;* 8 *Wheat.* 242, *Sexton* v. *Wheaton;* 11 *Ib.* 195, *Hines* v. *Longworth;* 1 *Hare & Wall. Lead. C.* 53 and 56; 7 *Halst.* 293, *Sterling* v. *Vancleve;* 4 *Harr.* 166, *Cumberland Bank* v. *Hann; R. S.* 839 and 840, § 22; 1 *South.* 317, *Casher* v. *Peterson;* 2 *South.* 479, *Cleaver* v. *Applegate;* 1 *Halst.* 140, *Wintermute* v. *Hankinson;* 6 *Halst.* 219, *Lloyd* v. *Wykoff;* 2 *T. R.* 298; 1 *B. & Ald.* 230; 15 *Mass.* 545; 6 *Harr.* 60.

The opinion of the court was delivered by

The CHIEF JUSTICE. The controversy in this cause arises between the execution creditors of Mackey Williams, and relates to the proceeds of the sale of certain personal property of said Williams, made by the sheriff of the county of Cape May, in the month of December, 1848. At the time of the

sale, there were in the hands of the sheriff three writs of *fieri facias* against Williams. The first execution, at the suit of Fifield & Matthews (the defendants in *certiorari*) was delivered to the sheriff on the 27th of January, 1848. The second execution, at the suit of James W. Caldwell, administrator, was delivered to the sheriff on the 23d of November, 1848. The third and last execution, at the suit of Moore & Mellon, was delivered to the sheriff on the second day of the sale. The plaintiffs in the second and third executions claim the proceeds of the sale of the defendant's property in preference to the plaintiffs in the first execution. The question presented for consideration is, whether the plaintiffs in the first execution have lost their priority or forfeited their title, in whole or in part, to the proceeds of the sale.

The *certiorari* is accompanied by a written agreement, between the counsel of the different parties, that all formal objections to the proceedings shall be waived; that the judgments, executions, inventories, depositions, rules and orders of the court below shall constitute the state of the case upon which the same shall be argued; that this court shall adjudge both upon the law and the facts of the case, as if the said several judgments had been originally entered, and all subsequent proceedings thereon had in this court. The case will be considered in accordance with the *agreement of the parties.* This will account for the apparent anomaly of a review by this court upon *certiorari,* not only of questions of law but of the merits of the case upon the evidence.

I. The evidence in the cause does not establish actual fraud committed or meditated by the plaintiffs, Fifield and Matthews, in the inception of their judgment. They were wholesale grocers in the city of Philadelphia. The defendant was a country merchant, carrying on business at Dennisville, in the county of Cape May, and a customer of the plaintiffs. At the date of the bond and warrant of attorney upon which the judgment is entered, it appears in evidence that Williams was indebted to Fifield & Matthews $200 upon a former judgment, and about $960 upon an account current for goods sold and delivered. Either in part payment or as collateral security for

Caldwell et al. v. Fifield & Matthews.

part of the account, the plaintiffs held Phipps & Sheder's note for $842.55, which had been assigned to them by the defendant, but which had not yet arrived at maturity. There is a conflict in the evidence as to the motive which induced the plaintiffs to take judgment for the entire debt, including the sum secured by the note. By an account rendered to the defendant on the 24th of December, 1847, about a month previous to the date of the bond, they had given Williams credit for the amount of this note, deducting the discount, and leaving a balance due on the account of $117.45. Williams testifies that, at the date of the judgment, there was but about $300 due from him to the plaintiffs, and that the design of taking the judgment for a larger amount than was actually due was to secure future advances, as well as the existing indebtedness, and that the defendant's liability on the note was resorted to, to enable the plaintiffs to make the necessary oath on entering the judgment. It is clearly in evidence, however, that Williams himself desired that the note should not be credited on the account, alleging that it did not belong to him, and that he would redeem it before its maturity. It is shown, moreover, that Williams subsequently admitted that the amount for which the bond was given was justly due to the plaintiffs, and that, on the second of May, 1848, after satisfying the whole account accruing subsequent to the date of the bond, he paid on account of the judgment $383.61, a sum more than sufficient to cancel the entire debt, independent of the amount covered by the note. The mere assignment by Williams to his creditors of the note of a third party on account of his indebtedness, in the absence of an express agreement to that effect, would not operate as payment of the account. Its utmost effect, would be to postpone the time for payment of the account until the maturity of the note. There is no satisfactory evidence of any such agreement between the parties. But admitting the existence of such agreement, there was neither fraud nor illegality in drawing that agreement by mutual consent, in holding the note as collateral security merely, and taking judgment for the entire claim of the plaintiffs. It is apparent that at the time the bond was given the debtor

was anxious for further advances, and that the creditors were willing to make them, upon receiving adequate security. It is but just and reasonable to conclude that a course was adopted, by giving the judgment for the entire debt, and leaving the note for collateral security, which should effect the object of the parties in consistency with law and justice. The coloring attempted to be given to the transaction by Williams is inconsistent with probability, is in direct conflict with the testimony of the witnesses and with his own admissions, and is irreconcilable with admitted facts in the cause. The decided preponderance of the testimony, independent of the oath of the plaintiff, is that the entire debt for which the bond was given was justly and honestly due and owing. If the evidence was more nearly balanced, nay if it be admitted that the scales were in equipoise, the case would not be altered. It requires more than a doubt to destroy the security of a judgment; its invalidity should be clearly established.

II. ·The debt itself at the time of·the giving of the bond being justly due, is there any thing in the subsequent conduct of the plaintiffs which will render the execution constructively fraudulent? It is insisted that though there be no actual fraud, there is legal fraud sufficient to postpone the plaintiff's execution.

By an attempt on the part of the plaintiffs at concealment. The alleged concealment consists in an understanding that the matter should not be made public, and in directions given by the plaintiffs to the sheriff that he should not make the execution notorious by going to the house of the defendant to make his levy. Concealment is but a badge of fraud; it may be consistent with fairness and prompted by humanity. In the present instance, the debtor was a merchant, to whose business a public knowledge of his embarrassment must necessarily prove disastrous. The plaintiffs in execution had no possible motive to collude with the defendant to enable him to defraud others. The judgment was on record, the execution was in the sheriff's hands, open and accessible to every one who desired the information. Whatever may have been the strictness of the common law on this point, I know of no

principle which at the present day in this state requires a judgment creditor, any more than a mortgage creditor, to proclaim the existence of his encumbrance, or which subjects him to the imputation of fraud, and a consequent loss of his security, if he pursue a course the least injurious to the feelings and the credit of his debtor. The conduct of the plaintiffs on the present occasion may have been, and from the evidence of the sheriff upon this point we are bound to presume were, prompted by the best of motives. To construe it as a legal fraud cannot be conducive to the ends of justice, much less to the claims of humanity.

It is further contended that the conduct of the plaintiff in giving to the sheriff, after making his inventory, an absolute stay of execution, in leaving the property in the hands of the defendant, in permitting him to use, to dispose of it, and to deal with it as his own, renders the execution constructively fraudulent. It is conceded that it would be so at the common law and by the laws of many of the states of the American union. But is it so by the law of this state?

It has been repeatedly decided, and is the well settled law of this state, in direct contravention of the rule of the common law, that the sheriff is not bound to remove goods levied upon, but may leave them in the actual possession of the defendant till the day of sale. *Casher* v. *Peterson*, 1 *South.* 317; *Sterling* v. *Vancleve*, 7 *Halst.* 285; *Cumberland Bank* v. *Hann*, 4 *Harr.* 166.

It is equally well settled in this state that the plaintiff, when he delivers his execution to the sheriff, or at any time afterwards, may direct the sheriff not to proceed to a sale without further orders from him, or unless urged on by younger executions, without thereby losing his priority, provided it be done in good faith. *Sterling* v. *Vancleve*, 7 *Halst.* 285; *James* v. *Burnet*, *Spencer* 635; *Cumberland Bank* v. *Hann*, 4 *Harr.* 166.

The point mainly relied upon to establish the legal fraud of the plaintiffs in the execution is the fact sworn to by the defendant in execution, that the defendant, "with the knowledge and consent of the plaintiffs in execution, bought and

sold goods out of the store, and purchased and sold other property, and exercised over the whole thereof the same control as he did before the execution of the bond." Taking this evidence to be true, it amounts substantially to this, that the defendant in execution, being a merchant and largely engaged in business, continued his business after the levy of the execution as before, with the knowledge and assent of the plaintiffs.

The seventh proposition resolved by the court in *The Cumberland Bank* v. *Hann* was, that "if the defendant is permitted, with the knowledge and consent of the plaintiff, express or implied, not only to retain the possession of the property, and to use and enjoy it for its ordinary and appropriate purposes, as in the case of household goods, but to exercise an unlimited control over all the property levied on, whatever may be its value, to use, sell, exchange, or consume it, as the rightful and absolute owner, it is such evidence of a fraudulent and colorable use of the process of the court, whether the debt be a real and just one or not, as to postpone the execution to younger ones sued out and prosecuted. in good faith."

It will be conceded, for the purpose of this inquiry, that the evidence of the defendant in execution brings the present case within the principle of the decision in *The Cumberland Bank* v. *Hann*, and that, if the seventh resolution of the court in that case be law, the plaintiffs in the present case have lost their priority.

In the case of *Woodruff* v. *Chapin*, decided in the Court of Errors and Appeals at January term, 1851, this question was very elaborately discussed by counsel and considered by the court. The case was finally decided upon the question of jurisdiction, which precludes the expression by the court of any opinion upon the law of the case.

It is well known, however, that a decided majority of the court entertained the opinion, upon the argument of that cause, that the seventh resolution of the Supreme Court in *The Cumberland Bank* v. *Hann* is not law, and that the judgment of this court in *Woodruff* v. *Chapin*, rendered in

Caldwell et al. v. Fifield & Matthews.

conformity with that resolution, would have been reversed upon that point had the case not been disposed of upon a preliminary question. This opinion of the Court of Appeals, not having been pronounced, is not referred to as authority, but as affording a cogent reason for a reëxamination by this court of the grounds of its former opinion.

The simple inquiry is, whether permitting a defendant in execution, after the levy, to deal with the property as his own, constitutes a legal fraud, which, without regard to the *bona fides* of the transaction, will postpone the execution in favor of a subsequent levy, or whether it simply affords *evidence* of a fraudulent intent, which may be rebutted.

It must be borne in mind that the principle is well settled in this state, in direct contravention of the rule of the common law, that property taken in execution may be left in the possession and enjoyment of the defendant. If it be consistent with law and with good faith that the execution creditor should permit his debtor to acquire a false credit by holding himself out to the world as the real owner of the property levied upon ; if the creditor may lawfully permit the defendant in execution to use and enjoy the property levied on as his own ; if he may from time to time, for an indefinite period, extend that indulgence, either from motives of humanity or in the hope of securing his debt, though by such means the property levied on be wasted, consumed, or greatly impaired in value, upon what principle can it be maintained that the sale or conversion of any part of the property levied upon by the defendant, in the regular course of his business, *ipso facto* annuls the execution or avoids the lien. The object of extending indulgence to the debtor, is to allow him an opportunity by his own exertions and the prosecution of his business to pay the debt. But if the property of a man in business, whether as a merchant, a manufacturer, or a farmer, be levied upon, he must of necessity, if permitted to pursue his business to any advantage, deal with the property as his own. Goods must be exchanged, the raw material converted into manufactured articles and sold or bartered, the crops of the farm must be gathered and disposed of, the stock must be fed, the labor-

ers must be paid ; every revolving season,. if not every succes-
sive week, must witness changes in the property levied on de-
.structive of the validity of the lien.    If the debtor be per-
mitted to hold and enjoy the property, why should he not be
:permitted to use it in the only way it can be effectually used
to enable him to pay his debts?    If the one is consistent with
.fair dealing, why is the other *per se* fraudulent?    Nor is it per-
ceived how permitting the defendant in execution to continue
,in the actual possession of his business after levy either hin-
ders, delays, or defrauds creditors.    It neither delays nor de-
·frauds a creditor who has no execution if a judgment creditor
indulges his debtor, even though the property levied upon be
diminished in value, or be consumed or used.    If the plaintiff
·in execution may lawfully levy on a part of the defendant's
·property, as he clearly may, why may he not, having levied
·upon the whole, permit the debtor to sell or dispose of part of
·the property levied on without rendering the levy void as to
the residue?    The subsequent creditor will be in no better con-
dition if the plaintiff in the first execution either force an im-
·mediate sale or levy on a part of the property, permitting the
defendant to dispose of the residue.    A subsequent *execution*
, creditor can neither be hindered nor delayed in the collection
of his debt by a prior execution, for he has it in his power at
all times to enforce a sale at his pleasure.    Undoubtedly the
conduct of the plaintiff, in permitting the defendant in execu-
·tion to use the property levied upon as his own, to consume
it, to sell or convert it to his own use, may afford evidence of
a fraudulent intent sufficiently strong to postpone the execu-
tion.    It was so held by this court in *Williamson* v. *Johnston*,
7 *Halst.* 86, and in *Matthews* v. *Warne*, 6 *Halst.* 295.    But in
neither of these cases was the fact, that the defendant was
, permitted to deal with the property levied on, held *per se*
fraudulent.    In both cases the evidence was held to be suffi-
ciently strong to establish the fraud.    In the former case the
court said, the circumstances of the case lead irresistibly to the
conclusion that the execution was kept up to give the debtor
undisturbed use of the goods and chattels, and to prevent any
creditor from taking them away from him by legal process to

satisfy his debt. If so, the latter execution must be preferred. This accords with the views of the court in *Casher* v. *Peterson*, 1 *South* 317. C. J. Kirkpatrick, in that case, in delivering the opinion of the court, said, "If the execution should not be pursued, and a subsequent one be levied on the same property, then it will always be a question whether the first was kept up merely by color and for fraudulent purposes, and if so, the last shall prevail, but if otherwise, the goods shall be holden by the first levy."

So by the fourth resolution of the court in *The Cumberland Bank* v. *Hann* (4 *Harr*. 169), it was held, that "if the goods levied upon are left in the defendant's possession for several years, or an unusual or unreasonable time, and the defendant is permitted to use and enjoy them as before the levy, it may be evidence of a fraudulent intent in law, more or less strong according to the circumstances, and of which the court may judge whenever the question arises." The same rule must in principle be extended to the sale, exchange, or conversion of part of the property levied on by the defendant. It will amount to evidence more or less strong, according to circumstances, that the execution is kept on foot for fraudulent purposes, but will not *per se* postpone the execution in favor of a subsequent execution. The rights of a *bona fide* purchaser of the goods levied upon from the defendant in execution will not be interfered with. If the defendant is permitted, with the assent of the plaintiff, to deal with the property in execution, sales made by the defendant must be held valid as against the lien of the execution. The circumstances in this case do not show that the first execution was kept on foot for fraudulent purposes, and it ought not, therefore, to be postponed in favor of the subsequent executions merely because the debtor, in pursuit of his regular business, has been permitted to sell, exchange, or convert to his use portions of the property levied upon.

III. It is further objected that there was no valid levy under the first execution, because the sheriff made the levy without having the property in his view or under his control. The defendant, with the concurrence of the plaintiff, furnished the

sheriff an inventory of his property, real and personal, which the sheriff endorsed on the execution, and returned as his levy. Whether this constitutes a valid levy, was much discussed in the case of *Lloyd* v. *Wyckoff*, 6 *Halst.* 218. Justice Ford, in that case, held it to be a well established principle in this court, that if an officer receiving an execution, makes in virtue of it a first and true inventory of the debtor's goods, and files it at the return of the writ, it amounts to a constructive seizure of possession of such goods, whereby they become appropriated to the satisfaction of such execution, and the officer acquires the property so as to maintain trespass or trover against any person taking it away. From this opinion, Mr. Justice Drake dissented, and held that " the making of an inventory through the information of others, or receiving one from the defendant, is not a sufficient levy. The sheriff must see the property, and have it under his control, and know what he has thus actually or constructively taken, in order to perfect his levy."

In *Cliver* v. *Applegate*, 2 *South.* 480, Justice Southard said the mere fact of the officer's seeing the goods when he makes the levy, can add nothing to his rights or his responsibilities.

In *Wintermute* v. *Hankinson*, 1 *Halst.* 140, Kirkpatrick, C. J., said the constable must make an inventory, and then only is he considered as taking possession of the goods of the defendant. And Ford, J., said a constructive possession might arise from the defendant's delivering to the constable an inventory of his goods.

It is well settled in this state that it is not necessary that the goods should be taken into the actual custody of the sheriff, or that they should be removed out of the possession of the defendant. It is enough if there be an inventory made by the sheriff, having the property in his view or under his control. The goods being left in the possession of the defendant, he becomes the bailiff of the officer, and the possession of the defendant the possession of the officer. If the inventory be made with the knowledge and assent of the defendant, if he himself furnish the inventory for the purpose of a levy, the property is transferred to the possession of the officer, and

placed under his control as effectually as if the inventory were made in view of the goods. There is evident propriety, in order to guard the rights of the plaintiff in execution, in the sheriff's seeing the goods. But if the plaintiff be satisfied with the fairness of the inventory and the good faith of the defendant, if he assents to a levy by inventory, it is not perceived that, in any aspect of the case, the levy can be invalidated or the constructive possession of the sheriff, and his right to the property levied upon, drawn in question by reason of his not seeing the goods at the time of making the inventory. The principal objections urged by Justice Drake against the validity of a levy made by means of an inventory do not apply where the inventory is furnished by the defendant with the assent of the plaintiff. It is unnecessary now to consider the question, whether an inventory made by the officer of goods not within his view or under his control, without the knowledge or assent of the defendant, be a valid levy.

The decision of this court in *The Princeton Bank* v. *Crozier & Moore,* 2 *Zab.* 383, is limited to a particular species of property; it does not at all conflict with the views now expressed.

It is clear that the subsequently acquired property is not bound by the levy under the plaintiff's execution. The proceeds of the sale of that part of the property were rightfully appropriated to the subsequent executions. *Matthews* v. *Warne,* 6 *Halst.* 309 ; *Lloyd* v. *Wyckoff,* 6 *Halst.* 222 ; *Cook* v. *Wood,* 1 *Harr.* 254.

The plaintiff's execution was properly levied upon the standing timber purchased by the defendant, with the right of cutting it within a specified time, under what is termed in the evidence a timber lease. The right of the defendant in that timber was a mere chattel interest. He had no interest in the land further than was necessary to authorize him to sever the timber, and carry it away. Nor was the lien of the plaintiff's execution lost by the subsequent cutting of the timber, with or without the assent of the plaintiff in execution. The evidence does not show that the wood upon the land included in the timber lease was cut prior to the levy. There is no room,

therefore, for the application of the objection, that the levy upon the timber lease would not include the wood previously severed and lying upon the land ·at the time of the levy.

The receipt of the 2d May, 1848, for $383.61, given by Fifield & Matthews to Williams, on account of the execution, must be credited accordingly. The execution having been so far satisfied, it was not in the power of the plaintiffs, even with the defendant's consent, by cancelling the receipt to impart new vitality to the judgment, in order to cover subsequent advances, to the prejudice of subsequent execution creditors.

The order of the court below must be in all things affirmed, with costs.

CITED in *Clapp* v. *Ely*, 3 *Dutcher* 598; *Kirkpatrick* v. *Cason*, 1 *Vr.* 332; *Dean* v. *Thatcher*, 3 *Vr.* 475.